# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GEORGE CHRISTOPHER STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV535 |
| | ) | |
| OFFICER DAWN LEAKE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Defendant Dawn Leak's[1] Motion for Summary Judgment. (Docket Entry 22.) Plaintiff George Christopher Stephens did not file a response to Defendant's motion. For the reasons that follow, the undersigned will recommend that Defendant's Motion for Summary Judgment be granted.

### I. BACKGROUND

Plaintiff, a *pro se* prisoner, filed this action alleging an excessive force claim against Defendant surrounding an incident that occurred while he was housed at Scotland Correctional Institution (hereinafter "Scotland") on November 27, 2020. (*See* Compl., Docket Entry 2 at 4-16.)[2] More specifically, Plaintiff alleges that as a result of requesting additional toilet paper from prison staff, Defendant brought Plaintiff some toilet paper while making her

---

[1] While the record reflects different spellings, it appears Defendant's name is "Dawn Leak."

[2] Unless otherwise noted, all citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

rounds on that day. (*Id.* at 5.) Plaintiff asserts that Defendant was alone and prison procedures require the opening of the wicket door be done in the presence of another officer. (*Id.* at 5, 16.) Therefore, Plaintiff anticipated that Defendant would place the toilet paper in an external box connected to his cell. (*Id.* at 16.) During this time, Plaintiff admittedly was masturbating and "to [his] surprise[,]" Defendant opened the wicket door and Plaintiff was exposed. (*Id.* at 12.) Allegedly moved by anger and malice, Defendant then proceeded to administer two bursts of OC pepper spray[3] to Plaintiff's genital area before leaving. (*Id.*) Plaintiff alleges that he was left to "suffer in pain and agony" and was not given an opportunity for immediate decontamination. (*Id.* at 12, 15.) He was subsequently escorted by officers to receiving to be decontaminated. (*Id.* at 15.) Plaintiff alleges that while he was masturbating, he presented no physical harm to anyone, and the force used by Defendant was excessive. (*Id.*)

After discovery, Defendant moved for summary judgement, arguing that there are no genuine issues of material fact which support Plaintiff's claim of an alleged violation of his constitutional rights. (Docket Entry 22.) Along with a brief in support of her motion, Defendant filed a declaration on her behalf. (*See* Declaration of Dawn Leak, Docket Entry 23-2.) In addition, counsel for Defendant filed a declaration and attached multiple exhibits which are records maintained by the North Carolina Department of Public Safety ("NCDPS"). (*See* Declaration of Counsel, Docket Entry 23-1.)

In pertinent part, Defendant recounts Plaintiff asking for more toilet paper earlier the night of November 27, 2020. (Leak Decl. ¶ 3.) While "conducting count with a fellow staff

---

[3] " 'OC' is an abbreviation for 'oleoresin capsicum.' OC spray is also known as pepper spray or mace." *United States v. Rodriguez*, 392 F.3d 539, 542 n.1 (2d Cir. 2004).

2

member," Defendant opened the wicket door to give Plaintiff the toilet paper, and Plaintiff "had his erect penis sticking out of the wicket door and he was masturbating." (*Id.*) Plaintiff proceeded to ejaculate on the wicket door while Defendant's hand was still on the wicket door. (*Id.*) Thus, to prevent an assault on her person and to restore order, Defendant administered two short half-second bursts of OC pepper spray towards Plaintiff, closed the wicket door and reported the incident to her sergeant. (*Id.*) Defendant felt Plaintiff "set [her] up to be a victim of a sexual assault" as Plaintiff knew Defendant was delivering the toilet paper to Plaintiff's cell. (*Id.* ¶ 4.) Defendant states that other staff immediately took Plaintiff into the receiving area to be decontaminated and medically evaluated. (*Id.* ¶ 5.)

Plaintiff's medical reports show he suffered a head laceration and ear abrasion that resulted from an unrelated use of force incident by another officer in the receiving area. (*See* Medical Records, Ex. H to Declaration of Counsel, Docket Entry 23-1 at 56-57; *see also* Incident Report, Ex. E to Declaration of Counsel, Docket Entry 23-1 at 16, 21.) As a result of Defendant's use of pepper spray, an internal investigation commenced, and the incident report concluded that "[a]ll policies and procedures ha[d] been followed. Only the minimum amount of force was used." (Incident Report, Ex. E to Declaration of Counsel, Docket Entry 23-1 at 22.) Following the incident, Plaintiff was charged and convicted of two disciplinary infractions. (*See* Disciplinary History, Ex. B to Declaration of Counsel, Docket Entry 23-1 at 7; *see also* Disciplinary Report, Ex. I to Declaration of Counsel, Docket Entry 23-1 at 64-65.)

Defendant also provided specific surveillance video footage from the area near Plaintiff's housing unit and the receiving area on the day of November 27, 2020 at Scotland. (*See* Exs. F & G to Declaration of Counsel, Docket Entry 23-1 at 52-53.) Surveillance video

shows Plaintiff being escorted out of his cell and escorted off the unit at approximately 12:24 a.m., which is just minutes after Defendant states her encounter with Plaintiff occurred. (*See* Leak Decl. ¶ 3.) The surveillance video also shows that Plaintiff made it to the receiving area at approximately 12:32 a.m., at which time he was wearing clothes, including socks. When he is seen leaving the area, he does not have on socks and has a clothing item in his hand which prison officials take.

## II. DISCUSSION

At the outset, because Plaintiff failed "to file a brief or response [to Defendant's summary judgment motion] . . . within the time required by [this Court's Local Rules], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice. M.D.N.C. R. 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).[4] Alternatively, a review of the record in this case demonstrates that Defendant is entitled to summary judgment for the reasons stated below.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick*

---

[4] Plaintiff's status as a *pro se* litigant does not excuse his inaction. As observed by the United States Supreme Court in *McNeil v. United States*, "[the Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." 508 U.S. 106, 113 (1993). "Accordingly, pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Dewitt v. Hutchins*, 309 F.Supp.2d 743, 749 (M.D.N.C. 2004) (internal quotation marks and citation omitted).

4

*v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met her burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear her burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

### A. Excessive Force[5]

Defendant argues that she was justified in the appropriate use of force to stop Plaintiff's assault and to restore order. (Docket Entry 23 at 10-17. "The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations and citation omitted).[6] Prison officials have "an affirmative obligation to take reasonable measures to guarantee [inmate's] safety." *Id.* (internal quotations and citation omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court

---

[5] Defendant's initial argument is that issue preclusion effectively bars Plaintiff's excessive force claim. (*See* Docket Entry 23 at 8-10.) "Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019) (internal quotations and citation omitted). The undersigned finds this argument unpersuasive for the same reasons explained in *Hughes v. Propst*, No. 1:21-CV-00164-MR, 2023 WL 3063383, at *6 (W.D.N.C. Apr. 24, 2023).

[6] Plaintiff's Complaint also references Article 1, Section 27 of the North Carolina State Constitution which prohibits the infliction of cruel and unusual punishment. (*See* Compl. at 3; *see also* N.C. Const. Art. I, § 27.) Defendant is entitled to summary judgment on any claim under the North Carolina State Constitution for the same reasons discussed herein based on the Eighth Amendment. *See Owen v. Goodwin*, No. 1:21-CV-00217-MR-WCM, 2023 WL 6446204, at *7 (W.D.N.C. Sept. 29, 2023) (citing *McNeill v. Harnett Cnty.*, 398 S.E.2d 475, 481 (N.C. 1990) ("Because the North Carolina Constitution is co-extensive with the Constitution of the United States on the issue of excessive force, the state constitutional claim must fail for precisely the same reasons."); *Johnson v. N. Carolina Dep't of Pub. Safety*, No. 1:16-CV-267-FDW, 2019 WL 2011056, at *14 (W.D.N.C. May 6, 2019) ("[Sister] Court has previously recognized that the analysis for [p]laintiff's claim under the N.C. Constitution would be nearly (if not, then exactly) identical as its analysis under the Federal Constitution.") (internal quotations and citation omitted); *Lewis v. N. Carolina Dep't of Pub. Safety*, No. 1:15-CV-284-FDW, 2019 WL 177480, at *19 (W.D.N.C. Jan. 11, 2019) ("Because [d]efendants are entitled to summary judgment on [p]laintiff's medical deliberate indifference claims under the Eighth Amendment's cruel and unusual punishment clause, . . . they are likewise entitled to summary judgment based on the N.C. Constitution's cruel or unusual punishment clause.").

considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotations and citation omitted).

> The objective component
>
>> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson*[, 503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014). In other words, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.' " *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). The Supreme Court has considered four non-exclusive factors to assist courts in determining wantonness conduct: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any

7

reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Here, considering the facts in light most favorable to Plaintiff, there is no genuine issue of material fact as to whether the use of force by Defendant during the November 27, 2020 incident was excessive. The evidence demonstrates that Defendant deployed the pepper spray to stop an assault on her person by Plaintiff and to restore order. "Corrections officers act with a permissible motive not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Freeman v. Deas*, No. 20-7345, 2023 WL 8230805, at *2 (4th Cir. Nov. 28, 2023) (quotations and citation omitted). Courts, including this district, have held that the use of mace or pepper spray to stop or prevent an assault, whether on staff or other inmates, is not excessive force. *See, e.g.*, *Wright v. Hamilton*, No. 1:20-CV-00296-MR, 2022 WL 451306, at *5 (W.D.N.C. Feb. 14, 2022) (finding that "[c]orrectional officers d[id] not violate an inmate's Eighth Amendment rights by using pepper spray to preserve internal order[,]" especially considering inmate's assaultive history including a serious assault on an officer the morning of); *Bogues v. Hoover*, No. CV CCB-20-829, 2021 WL 1060285, at *6 (D. Md. Mar. 18, 2021) ("Officer Strope deployed pepper spray on plaintiff after plaintiff attempted to spit on Officers Strope and Dolly . . . it appears that any force used at that time was applied in a good faith

8

effort to restore discipline."); *Wright v. Lassiter*, No. 1:18-CV-00090-MR, 2020 WL 4734413, at *7 (W.D.N.C. Aug. 14, 2020) ("Although Defendant Guzman used pepper spray on the Plaintiff, that use of force was necessary and proportionate to the risk posed by the Plaintiff, who had just assaulted an officer and was resisting other officers' attempts to stop the assault."); *Pyrtle v. Hayes*, No. 1:10CV683, 2012 WL 6547497, at *16 (M.D.N.C. Dec. 14, 2012) ("[T]he use of pepper spray in an attempt to stop an inmate-on-inmate assault, even if ultimately ineffective, constitutes a reasonable course of action."). Moreover, Defendant's conduct under the circumstances was generally consistent with prison policies regarding use of force. (*See, e.g.*, NCDPS Policy, Ex. J to Declaration of Counsel, Docket Entry 23-1 at 75 (pepper spray used as "the first level of response [t]o defend the officer or a third party from imminent assault").)

Furthermore, the amount of pepper spray used, which was minimal at two half-second bursts, demonstrates that it was proportional to Defendant's need for use of the pepper spray; that is, to stop the assault on her person. Further, Plaintiff's decision to masturbate and ejaculate in the direction of, and on, Defendant was more than a perceived threat on Defendant, thereby justifying the use of pepper spray to deter the conduct, protect Defendant, and to restore order. While Plaintiff alleges that he suffered pain, including a lingering burning sensation, *see* Compl. at 15, he has not responded to Defendant's motion providing medical evidence of such claims, nor does Defendant's evidence reveal such. Therefore, considering the *Whitley* factors, Plaintiff has failed to establish a claim for excessive force against Defendant and summary judgment should thus be entered in her favor. *See Keith v. Straker*, No. 1:09-CV-2264-RMG-SVH, 2010 WL 5136201, at *1 (D.S.C. Dec. 8, 2010) (finding no excessive force

claim where report showed that "[p]laintiff was standing naked at his cell flap door with his erect penis through the flap stroking it in a back and forth motion" and "that [defendant officer] administered pepper spray after she gave [p]laintiff a direct order to stop and he refused") (internal quotations and citations omitted)); *Hamlet v. Honeycutt*, No. CA 0:12-2410-TMC, 2013 WL 4495963, at *5 (D.S.C. Aug. 19, 2013) (finding no excessive force where prisoner was pepper sprayed after masturbating in the presence of staff, given directives to stop which prisoner ignored).

### B. Qualified Immunity

Alternatively, Defendant argues that she is entitled to qualified immunity. (Docket Entry 23 at 17-19.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Defendant did not use excessive force during the

10

Case 1:22-cv-00535-CCE-JLW   Document 28   Filed 01/09/24   Page 10 of 11

November 27, 2020 incident. Therefore, this Court concludes that Defendant is entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

## III. CONCLUSION

For the reasons sated herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 22) be **GRANTED**, and this action be dismissed with prejudice.

/s/ Joe L. Webster<br>
United States Magistrate Judge

January 9, 2024
Durham, North Carolina